UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
UNITED STATES OF AMERICA

              - against -

JOSEPH BARONE and ANTHONY PILIERO,

              Defendants.
---------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/11/10

**MEMORANDUM & ORDER**

S1 09 Cr. 91 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

        Joseph S. Barone ("Barone" or "defendant") together with

his co-defendant Anthony V. Piliero is charged in a Superseding

Indictment, filed on October 30, 2009, with conspiracy to commit

murder for hire and murder for hire.  See 18 U.S.C. § 1958.

Barone is also charged with one count of possession of firearms

by a convicted felon.  See 18 U.S.C. § 1922(g).  Trial in this

case is scheduled to commence on July 19, 2010.  This opinion

addresses the recently submitted letter motion challenging

Barone's detention since February 9, 2009, as both unwarranted

under the Bail Reform Act and unconstitutional under the Fifth

Amendment because of its duration.

**I.  Barone's Challenge to the Appropriateness of His Detention**
**under the Bail Reform Act**

        This bail application is only the most recent of many.

This Court has afforded the defendant no less than four hearings

-- on February 9, 2009, August 20, 2009, April 14, 2010, and

April 22, 2010[1] -- to review the basic appropriateness of his detention.[2] We have set forth the reasons for Barone's detention on the record in these prior sealed proceedings, upon careful consideration of the factors and standards provided by the Bail Reform Act. See 18 U.S.C. § 3142(e)-(g). While Barone's latest application for release, by letter submissions dated May 24, May 25, and June 7, 2010, does not raise any fundamentally new arguments as to the basic appropriateness of our detention order, we nonetheless take this opportunity to reiterate and clarify (to the extent feasible in a public opinion) the bases of that order.

Of course, Barone's detention is not merely based on the charges of murder for hire in this case, as defendant's submission seems to suggest. (See Letter of J. Muniz (June 7, 2010), at 4, 5). Additionally, Barone's continued detention is justified by the weight of the evidence. This evidence includes tapes of conversations between Barone and a confidential informant, which are the principal basis for the murder for hire charges, as well as two firearms and a bullet proof vest found in Barone's home at the time of his arrest. The taped

---

[1] These bail hearings were in addition to the many occasions on which the Court addressed Barone's conditions of confinement in the Special Housing Unit (SHU) of the Metropolitan Detention Center (MDC), including numerous orders and interventions concerning Mr. Barone's medical treatment.
[2] While we had scheduled a hearing for November 19, 2009, it had to be adjourned the day before due to procedural delays and miscommunication among counsel which, in the Court's view, were fairly attributable to both the government and the defense.

2

ack

conversations also refer to other criminal behavior which we decline to outline here for prudential reasons. We have carefully balanced such evidence against other undisputed aspects of Barone's history, which, as we have stated in sealed proceedings, weigh in Barone's favor. Having done so, we reaffirm our detention order because Barone poses both a danger to the community and a risk of flight.[3]

With respect to risk of flight, we recognize that such risk may be alleviated somewhat by Barone's proposed bail package. (See Letter of J. Muniz (June 7, 2010).) Nonetheless, and without altering in any way the presumption of Barone's innocence, we find that the government has met its burden of showing that neither the "moral suasion" of Barone's proposed sureties, the potential risk to those sureties, nor the safeguard of the electronic monitoring proposed would suffice to overcome defendant's incentive to flee in light of the imminence of the trial date and the strength of the government's evidence.

Further, and insofar as our findings on the record may not have been explicit in this regard already, we find that the government has indeed carried its burden of persuasion, through

---

[3]     As we emphasize below, the government has the burden of establishing defendant's dangerousness by "clear and convincing evidence." 18 U.S.C. § 3142(f). Factors considered in determining whether detention is appropriate are enumerated in the Bail Reform Act and include the nature of the offense, the weight of the evidence against the suspect, the history and character of the person charged, and the nature and seriousness of the risk to the community. Id. § 3142(g).

clear and convincing evidence -- based on the charges, the presence of weapons in Barone's home, and recorded references to other violent criminal behavior -- to support our determination that no combination of conditions of pretrial release will reasonably assure the safety of the community. See 18 U.S.C. § 3142(f).

## II. Barone's Due Process Challenge to His Detention

We write primarily to address the due process arguments which Barone raises for the first time in his submissions of May 24 and 25 -- as supplemented by his June 7, 2010 reply letter.

### A. Duration of Detention

Barone now contends that the duration of his detention violates his Fifth Amendment right to due process and requires his immediate release. At the outset, we cannot forego mentioning the irony that this argument is advanced for the first time less than a month before the trial date originally proposed by the Court (and adjourned at defense counsel's request for a month) and by a defendant who never asked for a trial date.

While the parties debate the development of case law in this Circuit, we need not fully engage in that debate because there can be no dispute that duration of detention remains a significant factor in the due process analysis. When the otherwise valid regulatory measure of pretrial detention is

4

"transform[ed]" into impermissible pretrial punishment, due process is violated. See United States v. Melendez-Carrion, 790 F.2d 984, 1007 (2d Cir. 1986) (Feinberg, C.J., concurring). At a certain point "detention in a particular case might become excessively prolonged, and therefore punitive in relation to Congress' regulatory goal." See United States v. Salerno, 481 U.S. 739, 747 n.4 (1987).

To determine whether the length of pretrial detention has become constitutionally excessive, courts must weigh four factors: (1) the length of detention that has occurred and the non-speculative length of future detention; (2) the extent to which the prosecution bears responsibility for the delay in starting trial; (3) the gravity of the charges; and (4) the strength of the evidence upon which the detention was based -- that is, the evidence concerning risk of flight and dangerousness to the community. E.g., United States v. El-Hage, 213 F.3d 74, 79 (2d Cir. 2000); United States v. Millan, 4 F.3d 1038, 1043 (2d Cir. 1993) (citations omitted).[4] Applying these

---

[4] While earlier cases framed the test as a three-factor standard, the Second Circuit has more recently included the gravity of the charges as an additional factor. See, e.g., El-Hage, 213 F.3d at 79. In either formulation, the standard for excessive detention reflects the Second Circuit's rejection of a bright-line test based on duration of detention alone. Id. (length of detention alone will rarely offend due process); Millan, 4 F.3d at 1044 (emphasizing that duration is not dispositive). Compare, e.g., Melendez-Carrion, 790 F.2d at 1009 (reasoning that an eight-month detention based solely on future dangerousness violated due process), and United States v. Gonzales-Claudio, 806 F.2d 334, 343 (finding, pre-Salerno, that a fourteen-month detention based solely on risk of flight violated due process), with Millan, 4 F.3d at 1044 (finding that a thirty-

considerations to the facts of Barone's case, and while recognizing that Barone's pretrial detention has, in retrospect, been regrettably lengthy, we simply cannot conclude that the duration of his detention is unconstitutionally excessive.

## 1. Length of the Detention

As noted, Barone has been detained for fifteen months. With trial set for July 19 and expected to last no more than two weeks, Barone's pretrial detention is anticipated to last for another month and a half. These facts weigh in opposing directions.

## 2. Responsibility for the Pretrial Delay

Turning to the second factor -- the extent, if any, to which the prosecution bears responsibility for the delay in starting trial, Millan, 4 F.3d at 1043 -- we find it particularly significant that any delay in starting trial in this case is fairly attributable to the defense and not to the prosecution. Barone has requested numerous extensions of time, with consent to corresponding exclusions of time under the Speedy Trial Act, in order to litigate various issues. Indeed, it appears to have been the defense's own strategic choice not to focus on litigating the merits of his case.[5]

---

month pretrial detention based on both dangerousness and risk of flight was not constitutionally excessive).

[5]   As reflected in the transcripts of sealed proceedings in early July 2009, the first suggestion that we schedule a trial date came from the government.   Given this Court's general policy of holding parties to trial

Thus, the second factor weighs strongly against Barone's due process challenge, brought as it was at the late stage of proceedings for which the defense itself has set the pace. See El-Hage, 213 F.3d at 80 (noting defendant's declining an earlier trial date).

### 3. Gravity of the Charges

The gravity of the charges against Barone, including murder for hire, plainly weighs in favor of the government's position. Accordingly, this factor warrants no further discussion.

### 4. Strength of the Evidence Underlying the Detention

The strength of the evidence warranting detention also weighs against Barone's due process challenge to his detention. For the reasons already discussed in Part I, detaining Barone continues to be a valid regulatory measure pending trial. We reiterate that, in addition to Barone's substantial risk of flight, clear and convincing evidence demonstrates that no conditions of bail would assure the safety of the community, a

---

schedules once they are set, we determined at that conference that scheduling a trial date would have been inefficient because certain discovery issues had yet to be resolved. Nonetheless, within a month's time, we asked defendant to propose a schedule for the filing of pretrial motions. After that early pretrial motion schedule was set, Barone's counsel requested a series of extensions. In addition, months were lost as a result of the defense's aborted efforts to obtain certain evidence for a bail hearing. Following several extensions (and reminders from chambers), Barone's pretrial motions, which include a motion to suppress, were filed on February 12, 2010 -- over a year after his initial appearance. Defendant's reply papers were filed on March 8, 2010. Those motions remain pending, with further oral argument scheduled for June 15, 2010, in part because Barone requested to supplement his suppression arguments after the hearings held on April 14 and 22, 2010.

concern which does not necessarily diminish with time. See Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

Having weighed the foregoing factors, we do not find that the duration of Barone's pretrial detention -- which is fairly attributable to the defense's own choices -- offends due process.

## B.   Conditions of Detention

In addition to focusing primarily on the duration of his detention, Barone's recent submissions also raise due process concerns based on the conditions of his confinement in the SHU. Specifically, Barone claims that the strict conditions of his involuntary segregation in the SHU have burdened his liberty interest in remaining in general population, his health, and his right to counsel (owing to the limited and apparently unpredictable access to SHU inmates). Along with the duration-focused factors discussed in Part II.A, the conditions of confinement are significant considerations in the due process analysis. See, e.g., Bell v. Wolfish, 441 U.S. 520, 535-40 (1979); El-Hage, 213 F.3d at 81.[6]

---

[6]    To determine whether a prison regulation burdens an inmate's "fundamental rights," we ask whether the regulation is "'reasonably related' to legitimate penological objectives, or whether it represents an 'exaggerated response' to those concerns." Turner v. Safley, 482 U.S. 78, 87 (1987).   In Turner, the Supreme Court outlined a four-factor test for evaluating whether a prison regulation that allegedly violates a constitutional right is reasonably related to a valid correctional objective. The court must consider (1) whether there is a "valid, rational connection" between the regulation and the legitimate governmental interest used to justify it; (2) whether there are alternative means for the prisoner to

8

In Barone's case, however, this is a non-issue. The fact that Barone remains in segregation is a result of his refusal to be transferred to general population at the Queens Contract Detention Facility (Wackenhut Detention Center). That alternative was repeatedly offered to the defendant and was repeatedly rejected.

In addition, we note that, while we have on numerous occasions expressed our confusion and concern over the proffered rationale for Barone's continued segregation in the SHU, this Court must defer to the Bureau of Prison's discretion in executing the internal administration of its facilities and practices which, in the judgment of Bureau officials, are needed to protect inmates. Significantly, the record is devoid of any indication that Barone's segregation has an impermissible punitive purpose. Cf. Petrucelli v. Hasty, 605 F. Supp. 2d 410, 429 (E.D.N.Y. 2009) (finding no punitive purpose in detainee's SHU confinement and emphasizing deference to prison administrators' discretion) (citing Wolfish, 441 U.S. at 547).

---

exercise the right at issue; (3) the impact that the desired accommodation will have on guards, other inmates, and prison resources; and (4) the absence of "ready alternatives." Id. at 89-91; accord United States v. Felipe, 148 F.3d 101, 110 (2d Cir. 1998). "Where the regulation at issue imposes pretrial, rather than post-conviction, restrictions on liberty, the 'legitimate penological interests' served must go beyond the traditional objectives of rehabilitation or punishment." El-Hage, 213 F.3d at 81.

## III. Conclusion

For the foregoing reasons, defendant's application for release on bail pending trial is DENIED.

**IT IS SO ORDERED.**

Dated:     New York, New York
           June 11, 2010

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

A copy of the foregoing Memorandum and Order has been mailed on this date to the following:

John T. Zach, AUSA
U.S. Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

Jose A. Muniz, Esq.,
227 Broadway, Suite 108
New York, NY 10007

Edward A. McDonald
Dechert, LLP
1095 Avenue of the Americas
New York, NY 10036-6797